UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

ADELAIDA MARTINEZ aka ADELA MARTINEZ,

Plaintiff,

v.

CARL'S JR. RESTAURANTS LLC, A Delaware Limited Liability Company; CKE RESTAURANTS HOLDINGS, INC., a Delaware Corporation; and DOES 1 to 25, inclusive

Defendants.

Case No.: 5:25-cv-00535-MEMF-SK

**ORDER DENYING DEFENDANTS' PARTIAL MOTION FOR SUMMARY JUDGMENT [DKT. NO. 25]**

Before the Court is the Motion for Partial Summary Judgment filed by Defendants Carl's Jr. Restaurants LLC ("Carl's Jr") and CKE Restaurants Holdings, Inc. ("CKE"). Dkt. No. 25. For the reasons stated herein, the Court hereby DENIES the Motion for Partial Summary Judgment.

/ / /

/ / /

/ / /

/ / /

/ / /

1

## I.      Factual Background

Plaintiff Adelaida Martinez was employed by Defendants Carl's Jr. and CKE (collectively, "Defendants") at a Carl's Jr.'s store in Hemet, California as a crew member and cook. Martinez alleges that she was terminated for requesting an additional six-month medical leave due to her cancer and that this constituted disability discrimination in violation of the Fair Employment and Housing Act ("FEHA"). The parties dispute whether Defendants are liable for disability discrimination, retaliation, and wrongful termination.

## II.      Procedural Background

On January 3, 2025, Martinez filed a complaint in the Superior Court of Riverside County against Defendants alleging (1) disability discrimination in violation of the FEHA; (2) failure to prevent discrimination in violation of the FEHA; (3) failure to accommodate in violation of the FEHA; (4) failure to engage in the interactive process in violation of the FEHA; (5) retaliation in violation of the FEHA; and (6) wrongful termination in violation of public policy. *See* Dkt. No. 1-1 ("Complaint"). On February 27, 2025, Defendants removed the action to this Court. Dkt. No. 1.

On December 18, 2025, Defendants filed this instant Motion for Partial Summary Judgment jointly briefed by the parties. Dkt. No. 25 ("Motion"). The parties filed a joint statement of uncontroverted facts, Dkt. No. 25-1, and a joint evidentiary appendix, Dkt. No. 25-2, and Martinez filed her own statement of additional material facts, Dkt. No. 25-3. The Court held a hearing on the Motion on March 5, 2026, where the Court ordered the parties to file a short joint supplemental brief addressing the issue of whether the employees at issue were "managing agents" for purposes of punitive damages. Dkt. No. 34. On March 17, 2026, the parties filed the joint supplemental brief regarding punitive damage. Dkt. No. 37.

## III.      Applicable Law

### A.      Motions for Summary Judgment

Summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248 (1986)). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

A court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992). "A moving party without the ultimate burden of persuasion at trial—usually, but not always, a defendant—has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). To carry its burden of production, the moving party must either: (1) produce evidence negating an essential element of the nonmoving party's claim or defense; or (2) show that there is an absence of evidence to support the nonmoving party's case. *Id.*

Where a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial. *Id.* at 1102-03. In such cases, the nonmoving party may defeat the motion for summary judgment without producing anything. *Id.* at 1103. However, if a moving party carries its burden of production, the burden shifts to the nonmoving party to produce evidence showing a genuine dispute of material fact for trial. *Anderson*, 477 U.S. at 248–49. Under these circumstances, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted). If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the motion for summary judgment shall be granted. *Id.* at 322 ("Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

A party cannot create a genuine issue of material fact simply by making assertions in its legal papers. *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co.*, 690 F.2d 1235, 1238 (9th Cir. 1982). Rather, there must be specific, admissible evidence identifying the basis for

the dispute. *See id.* "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may . . . consider the fact undisputed." Fed. R. Civ. P. 56(e)(2). The Court need not "comb the record" looking for other evidence; it is only required to consider evidence set forth in the moving and opposing papers and the portions of the record cited therein. *Id.* 56(c)(3); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001). The Supreme Court has held that "[t]he mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]." *Anderson*, 477 U.S. at 252.

To carry its ultimate burden of persuasion on the motion, the moving party must demonstrate that there is no genuine issue of material fact for trial. *Nissan Fire*, 210 F.3d at 1102; *Celotex Corp.*, 477 U.S. at 323.

### B.     *McDonnell Douglas* Framework

Claims for employment discrimination use a burden-shifting framework based on the Supreme Court's decision in *McDonnell Douglas*. *See Earl v. Nielsen Media Rsch., Inc.*, 658 F.3d 1108, 1112 (9th Cir. 2011); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). "When entertaining motions for summary judgment in employment discrimination cases arising under state law, federal courts sitting in diversity must apply the *McDonnell Douglas* burden-shifting scheme as a federal procedural rule." *Zeinali v. Raytheon Co.*, 636 F.3d 544, 552 (9th Cir. 2011) (internal alterations and citations omitted).

Under the framework, first, the plaintiff "bears the initial burden of establishing a prima facie case of employment discrimination." *Earl*, 658 F.3d at 1112. Second, once the plaintiff meets his or her initial burden, "the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions." *Id.* Third, "[i]f the employer articulates a legitimate reason, the plaintiff must raise a triable issue that the employer's proffered reason is pretext for unlawful discrimination." *Id.* The "second and third steps of the *McDonnell Douglas* framework necessarily require an inquiry into the defendant's proffered reasons for the adverse employment decision." *Zeinali*, 636 F.3d at 550. "The ultimate burden of persuasion remains with the plaintiff." *Earl*, 658 F.3d at 1112.

"A plaintiff may demonstrate pretext in either of two ways: (1) directly, by showing that unlawful discrimination more likely than not motivated the employer; or (2) indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable." *Earl*, 658 F.3d at 1112-13. If the plaintiff relies on circumstantial evidence, "the plaintiff must produce 'specific' and 'substantial' facts to create a triable issue of pretext," although this burden is not an "onerous" one. *Id.* at 1113. When the evidence is direct, "'[w]e require very little evidence to survive summary judgment' in a discrimination case." *E.E.O.C. v. Boeing Co.*, 577 F.3d 1044, 1049 (9th Cir. 2009) (quoting *Lam v. Univ. of Hawaii*, 40 F.3d 1551, 1564 (9th Cir. 1994)). "[B]ecause of the inherently factual nature of the inquiry, the plaintiff need produce very little evidence of discriminatory motive to raise a genuine issue of fact." *Lindahl v. Air France*, 930 F.2d 1434, 1438 (9th Cir. 1991).

## IV.    Findings of Fact[1]

The Court finds the following material facts are established for trial under Federal Rules of Civil Procedure 56(a) and 56(g):

Adelaida Martinez was hired on May 5, 1992, as a crew member at Carl's Jr.'s corporate store located in the city of Hemet, California (the "Hemet store"). SUF ¶ 1; PAMF ¶ 1. She was an employee for Defendants for thirty-two years. *See* Dietrich Dep. 132:13-20, 22-25, Ex. 6, Dkt. No. 25-2; Moran Dep. 87:6-12, Ex. 4, Dkt. No. 25-2; Salinas Dep. 99:15-19, Ex. 5, Dkt. No. 25-2.

The General Managers at the Hemet store were Yesenia Gonzalez (from March 2023 to December 2023) and Elvia Moran (from January 2024 to at least the time Moran's deposition was

---

[1] The facts set forth below are taken from the parties' respective Joint Statement of Uncontroverted Facts, Dkt. No. 25-1 ("SUF"), and Plaintiff's Additional Statement of Material Facts ("PAMF"), Dkt. No. 25-3. To the extent that any statements of fact are omitted, the Court concludes they are not material to the disposition of this Motion. To the extent that any of the facts set below were allegedly disputed, the Court concludes that no actual dispute exists or that the adopted language resolves the dispute.

In making these Findings of Fact, the Court considered Defendants' Evidentiary Objections. Dkt. Nos. 25-1, 25-3. The Court did not find any evidence objected to essential to finding any fact stated herein, and therefore need not reach the Evidentiary Objections except as explicitly addressed in the order.

taken in September 2025[2]), and they both reported to District Manager Rigoberto Salinas, who oversaw the Hemet store as well as other stores in his district. SUF ¶ 2. Charon Alexander was an HR professional for CKE. *Id.* ¶ 29. Alicia Dietrich was a Benefits Analyst for CKE, whose job duties involved assisting store level employees with leaves of absences. *Id.* ¶ 37.

In 2023, Martinez was diagnosed with breast cancer, and she underwent surgery on or around June 29, 2023. *Id.* ¶ 3. She told Salinas she had cancer in March 2023. *Id.* ¶ 8. No one at Carl's Jr. made any offensive or negative comments to her about having cancer because "[she] never told any of the rest of the staff there and when [she] told [Salinas] and [Gonzalez], [she] told them not to disclose this to the rest of the staff." *Id.* ¶¶ 10-11.

Martinez first took leave to have the surgery on June 29, 2023, and returned to work on or around July 17, 2023. *Id.* ¶¶ 3-4. On or around August 1, 2023, Martinez was placed on leave again due to complications from her surgery, and Defendants approved extending her leave to March 2024. *See id.* ¶ 5-9. On or around March 14, 2024, Martinez provided Moran with a doctor's note that extended her leave an additional six months to September 2, 2024. *Id.* ¶ 12. Moran forwarded the note to Dietrich, who was processing all of Martinez's prior leave requests. *Id.* ¶ 13. On March 20, 2024, via an email, Martinez was informed of her termination due to her having "been absent from work since August 2, 2023," that she had exhausted her FMLA leave, that she was not eligible for any additional leave, and that Defendants could not continue to accommodate her absence. *Id.* ¶ 24. Martinez alleges that the "true reason for her termination was due to her disability and/or medical condition and request for accommodation," and that "Defendants discriminated [and retaliated] against [her] due to [her] disability and/or medical condition" by "suspending or terminating [her] or subjecting [her] to differential treatment" for requesting an accommodation. *Id.* ¶¶ 26-27.

/ / /

/ / /

---

[2] The cite to SUF ¶ 2 only references Moran as the General Manager of the Hemet store from January 2024 "to the present." SUF ¶ 2. It is unclear what "to the present" refers to, but based on the factual allegations cited for this proposition, it seems that "the present" refers to at least the time the deposition was taken in September 2025. *See* Moran Dep. 22:14-24:9.

V.     **Discussion**

Defendants move for partial summary judgment on Martinez's first cause of action for disability discrimination, second cause of action for failure to prevent discrimination, fifth cause of action for retaliation, sixth cause of action for wrongful termination, and any remedy of punitive damages. *See generally* Motion. For the reasons discussed below, the Court finds that there are disputed issues of material fact as to Martinez's claims of disability discrimination, failure to prevent discrimination, wrongful termination, retaliation, and punitive damages.

A.  **There Is a Dispute of Material Fact as to Martinez's Disability Discrimination Claim (Claim One).**

i.   There are genuine issues of material fact with respect to whether Defendants nondiscriminatory reason was pretextual.

To establish a prima facie case of disability discrimination under FEHA, a plaintiff must show that "(1) he suffers from a disability; (2) he is otherwise qualified to do his job; and (3) he was subjected to adverse employment action because of his disability." *Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497 (9th Cir. 2015) (quoting *Faust v. Cal. Portland Cement Co.*, 58 Cal. Rptr. 3d 729, 745 (Cal. Ct. App. 2007)).

The parties do not dispute whether Martinez established a prima facie case of disability discrimination. *See* Motion at 12, 14, 16. The parties dispute whether Martinez can meet her burden to show pretext because Defendants have articulated a legitimate, nondiscriminatory reason for her termination. *See id.* at 12-16. Drawing all inferences in Martinez's favor, the Court finds that there is a dispute of material fact as to whether Defendants' stated reason for terminating Martinez was pretextual.

Defendants contend that they viewed Martinez's six-month request for leave as a request for indefinite leave and could not grant that request because of staffing issues at a "chronically understaffed, high-volume store." *See id.* at 12-13, 16. There are genuine disputes of material fact as to whether: (1) the request was for indefinite leave, and (2) there were chronic staffing issues at the Hemet store.

7

First, Martinez contends there is direct evidence of pretext to avoid the *McDonnell Douglas* burden-shifting framework. *See id.* at 15. Martinez points to Dietrich's testimony, where when asked if Martinez was "terminated for any other reason besides needing to be out on leave because of her disability," Dietrich testified "no," and "that was the only reason [Martinez] was terminated." *See* Dietrich Dep. 171:8-18. But right after this question, Dietrich was asked if "the only reason [Martinez] was terminated was because of her disability and request for accommodation," and Dietrich testified "no," and that the other reason for her termination was "because [Defendants] could not accommodate what appeared to be an indefinite leave." *See id.* 171:23-172:8. Although this is not direct evidence that "unlawful discrimination more likely than not motivated the employer," *Earl*, 658 F.3d at 1112-13; *see also* Motion at 15, the Court finds this inconsistent with Martinez's doctor's notes and Dietrich's and Alexander's reasons for the denial of leave (discussed below), which collectively constitutes circumstantial evidence and creates a question of fact regarding whether Martinez was terminated because of her disability*, see Earl*, 658 F.3d at 1112-13; Motion at 17.

Second, there is a genuine issue of material fact as to whether Defendants viewed Martinez's leave request as indefinite. Dietrich testified that based on her experience, "according to [Martinez's] doctor's notes it appeared that it was going to be an indefinite leave." Dietrich Dep. 127:7-10. But Dietrich admitted that Martinez's notes did not say "indefinite leave" anywhere on it, and Dietrich testified that the reason for the denial was because they could not "accommodate an extension that long," and not because it was "indefinite." *Id.* 88:12-18; 127:11-17; *see also* Exs. 11-13, Dkt. No. 25-2; Alexander Dep. 81:14-23, Ex. 7, Dkt. No. 25-2 (noting that Martinez was asking for "an additional six months," not an indefinite leave). And even assuming the notes were ambiguous as to Martinez's return date because it "appeared to be an indefinite leave," *see* Motion at 4, Dietrich testified that the doctor's note provided "a specific return to work date," Dietrich Dep. 88:15-18, and Dietrich also wrote in an email that the note was extending Martinez's leave by "another [six] months," *see* Ex. 12, Dkt. No. 25-2, so there is still a question of fact regarding whether the note was

ambiguous.[3] Accordingly, when viewing the facts in Martinez's favor, a reasonable jury could infer that Defendants did not find that the leave request was indefinite and thus it was not a legitimate basis for termination.[4]

Finally, there is a genuine issue of material fact as to whether Defendants would suffer an undue hardship from Martinez's leave request due to their purportedly chronic staffing issues. Defendants testified that they "had retention [and staffing] issues," because employees at the Hemet store often "no-showed" on a weekly basis, which made it difficult for the store to provide fast service. *See* Alexander Dep. 94:9-13, 113:22-114:22; Gonzalez Dep. 97:12-98:19, Ex. 3, Dkt. No. 25-2. But the Hemet store was "able to continue operating without [Martinez] for over six months," and the store hired cooks after Martinez was "on medical leave but before her termination." Salinas Dep. 83:18-25, 92:18-23; *see also* PAMF ¶ 2. And the district manager who oversaw the Hemet store and the general manager of the store from March to December 2023 did not testify that Martinez's absence caused the store any hardship. *See* Garcia Dep. 62:13-63:13; Salinas Dep. 116:9-12. Moreover, there was a cook at the same Hemet store who was on medical leave for a worker's comp injury for longer than a year and eight months before January 2024. *See* Moran Dep. 38:11-39:8, 41:8:42-5. Drawing all inferences in favor of Martinez, a reasonable jury could find from this

---

[3] At the hearing, Defendants' counsel argued that the history of Martinez's doctor's notes created no issue of material fact regarding the indefinite leave, but the Court is not persuaded by this argument.

[4] Defendants contend that "[f]acts pertaining to purported omissions in the decision-making process and the sufficiency of the interactive process[, like the interpretation of Martinez's leave request,] are relevant to Plaintiff's claims for failure to accommodate and engage in the interactive process, which are not at issue in this Motion, and are not evidence of [discriminatory intent for] pretext." *See* Motion at 1, 9, 14, 18. However, Martinez's disability discrimination claim alleges that she was *terminated* due to her alleged disability and request for accommodations, *see* Compl. ¶¶ 15-17, 21 (emphasis added). Therefore, facts relating to the interpretation of Martinez's medical leave request and who were involved in the decision to terminate her go to whether Martinez was impermissibly terminated due to her disability or if there was a non-pretextual legitimate reason for the termination. *See* Motion at 14-16; *see also Dominguez-Curry v. Nevada Transp. Dep't*, 424 F.3d 1027, 1039 (9th Cir. 2005) (noting that a "single discriminatory comment by a plaintiff's supervisor or decisionmaker is sufficient to preclude summary judgment for the employer").

circumstantial evidence that Martinez's additional six-month leave request did not create a hardship and thus Defendants only used its chronic staffing issues as pretext to terminate Martinez.[5]

Accordingly, the Court finds that there is a genuine issue of material fact as to whether Defendants' proffered reason for terminating Martinez was pretextual and DENIES summary judgment on this claim.

### B.  There Is a Dispute of Material Fact as to Martinez's Failure to Prevent Discrimination Claim (Claim Two).

Defendants move for summary judgment on Martinez's failure to prevent discrimination claim on the grounds that there is no triable issue as to the underlying discrimination claim. *See* Motion at 19. Because the Court found otherwise, the Court DENIES summary judgment to Defendants on this claim.

### C.  There Is a Dispute of Material Fact as to Martinez's Retaliation Claim (Claim Five).

To establish a prima facie case of retaliation, a plaintiff must show that (1) she engaged in protected activity, (2) the defendant subjected her to an adverse action, and (3) there is a causal link between the two. *Yanowitz v. L'Oreal USA, Inc.*, 116 P.3d 1123, 1130 (Cal. 2005). It is undisputed that Martinez established a prima facia case for retaliation, and again, the only question is whether Defendants' proffered legitimate reason for terminating Martinez after she made her accommodation request was pretextual. *See* Motion at 20-21. Here, the Court finds that there is a question of fact as to pretext.

Like with the discrimination claim, Defendants argue that they had a non-retaliatory, legitimate reason for terminating Martinez after her accommodation request—namely, that she was requesting leave of indefinite duration which its chronic staffing issues would not permit it to

---

[5] There is also a question of fact as to whether Dietrich, Moran, Alexander, and Salinas played a role in Martinez's termination. *See* Motion at 8; PAMF ¶¶ 19-20; *see also* Dietrich Dep. 75:4-76:12 (noting that Moran, Salinas, and Alexander were involved in the group decision to deny Martinez's leave request and they only talked via email); Alexander Dep 182:8-183:7, 193:8-194:13 (noting that Alexander did not have discussions with Moran, Salinas, or Dietrich about Martinez's leave request or the decision to terminate her); Salinas Dep. 77:14-22, 107:1-14 (same for Salinas); Motion at 15, 18. This contributes to why granting Defendants' Motion is inappropriate.

accommodate. *See id.* at 20. This is the same reason Defendants proffer in response to the discrimination claim. But the Court finds there is a question of fact as to whether Defendants' reason was legitimate. Dietrich testified that it would not be fair to say that Martinez's condition was a motivating factor in the decision to terminate her, but then when asked if Martinez was "terminated for any other reason besides needing to be out on leave because of her disability," Dietrich testified "no," and that Martinez's need to be on leave due to her disability "was the only reason she was terminated." *See* Dietrich Dep. 170:24-171:18, 172:9-14. And then Dietrich contradicted herself by testifying that the reason for Martinez's termination was "because [Defendants] could not accommodate what appeared to be an indefinite leave." *Id.* 171:23-172:8. Accordingly, the Court finds there is a question of fact as to whether Defendants' reason for terminating Martinez was pretextual and DENIES summary judgment on the retaliation claim.

### D. There Is a Dispute of Material Fact as to Martinez's Wrongful Termination Claim (Claim Six).

Defendants move for summary judgment on Martinez's wrongful termination claim on the grounds that there is no triable issue as to the underlying discrimination and retaliation claims. *See* Motion at 21-22. Because the Court found otherwise, the Court DENIES summary judgment to Defendants on this claim.

### E. There Is a Dispute of Material Fact on Punitive Damages as to Alexander and Dietrich.

There is a high burden to win punitive damages against an employer in California. To deny summary judgment on punitive damages, Martinez must show by "clear and convincing evidence" that there is a genuine dispute of material fact that an "officer, director, or managing agent" engaged in an "act of oppression, fraud, or malice," or consciously disregarded, authorized, or ratified such an act. *White v. Ultramar, Inc.*, 981 P.2d 944, 950 (Cal. 1999); Cal. Civ. Code § 3294(a); *see also Basich v. Allstate Ins. Co.*, 105 Cal. Rptr. 2d 153, 158 (Cal. Ct. App. 2001) (noting that the clear and convincing evidence standard for punitive damages applies on summary judgment). "'Malice' means conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of

others." Cal. Civ. Code § 3294(c)(1). Mere negligence by the corporation is insufficient. *See White*, 981 P.2d at 950.

Moreover, managing agents are defined narrowly as "corporate employees who exercise substantial independent authority and judgment in their corporate decision-making so that their decisions ultimately determine corporate policy." *Id.* at 947. Discretion over corporate policy is referring to "formal policies that affect a substantial portion of the company and that are the type likely to come to the attention of corporate leadership. It is this sort of broad authority that justifies punishing an entire company for an otherwise isolated act of oppression, fraud, or malice." *Roby v. McKesson Corp.*, 219 P.3d 749, 767 (Cal. 2009), *as modified* (Feb. 10, 2010). Even if a manager has authority to hire and fire other employees, that alone is insufficient to establish the manager as a "managing agent." *White*, 981 P.2d at 947. "The scope of a corporate employee's discretion and authority under [the] test [to be a "managing agent"] is therefore a question of fact for decision on a case-by-case basis." *Id.* at 944.

Here, the Court finds there is a genuine issue of material fact as to punitive damages. First, the Court finds there is a genuine issue regarding whether there was an "act of oppression, fraud, or malice." Defendants argue that Martinez cannot show "with 'clear and convincing' evidence that the underlying acts constituted oppression, fraud, or malice," because the decision to deny leave was based on an interpretation of Martinez's leave being indefinite, which does not show malice or oppression. *See* Motion at 23. Nor was there a conscious disregard of Martinez's rights. *Id.* at 23-24. But as discussed above, the Court found there was a dispute of material fact regarding whether Defendants' stated reason for terminating Martinez was pretext for terminating Martinez due to her disability, and a reasonable jury could likewise find that "that terminating a long[-]term employee with cancer was malicious." *Id.* at 26.

Second, the Court finds there is a genuine dispute as to whether Alexander and Dietrich were "managing agents." As to Alexander, the H.R. director, the Court finds there is a question of fact as to whether she is a "managing agent." Defendants contend that Alexander's role was "advisory and operational rather than policy-forming," and she did not have the "authority to establish the rules

governing leave, accommodations, or termination practices for the company." Dkt. No. 37 at 9. But this is in dispute.

In *King*, the California Court of Appeals held that the employee investigator was a "managing agent," because she was "given the discretion and judgment to determine what to do and how to do [the investigations], with appropriate support from their managers. It was up to the investigators, however, to determine if/when to consult with their managers on a case-by-case basis." *King v. U.S. Bank Nat'l Assn.*, 266 Cal. Rptr. 3d 520, 556 (Cal. Ct. App. 2020), *as modified on denial of reh'g* (Aug. 24, 2020). "There was no evidence suggesting [the employee's] ability to determine who to interview or how to perform an interview or investigation . . . was limited in any respect." *Id.* at 557. Thus, given "the breadth of the discretion delegated to [the employee investigator] in determining how to fairly and thoroughly investigate . . . and what constituted a fair and thorough investigation," the jury could reasonably have "inferred she had the authority and discretion to interpret and apply the investigative policies for [the defendant employer] as she saw fit, such that her decisions ultimately determined corporate policy." *Id.*

Here, like the employee in *King*, Alexander was given the discretion to determine what leaves of absences she believes were indefinite, and she was not told by Defendants how to determine if a leave request was indefinite. When Alexander was asked if she had the discretion to make determinations "as to what leaves [she] believe[s] to be indefinite," she testified that she has "the discretion to review doctor's notes to determine if those doctor's notes have enough information, if they're going to be approved, to go through the accommodation process to make the determination of whether or not [Defendants] can accommodate them," and there was no policy or procedure that directed her on how to determine whether a leave was considered indefinite or not. Alexander Dep. 135:15-136:19. Alexander also did not have to get permission to make this decision from anyone above her. *Id.* 138:6-11. So although Alexander said she is "not creating a policy," *id.* 137:15-25, a reasonable jury could find that she had "broad discretion on whether to grant or deny employee leave requests," Dkt. No. 37 at 12, because she was determining if Defendants could "accommodate [the employee]" and if the leave was unreasonable, *see* Alexander Dep. 136:5-10,

137:4-138:4. Accordingly, the Court finds there is a question of fact regarding if Alexander was a "managing agent." *See* Dkt. No. 37 at 21-22.

Next, as to Dietrich, the benefits analyst, there is a genuine dispute. Dietrich said it is a group effort to decide "whether or not employees leave requests were reasonable," and to deny Martinez's leave request. Dietrich Dep. 97:9-12, 98:25-100:1. But other than an email chain, Dietrich did not have any other communications, like a phone or zoom call, with Alexander or Salinas about the decision to deny the leave request. *Id.* 75:16-76:12. And Alexander denies having communications with Salinas or Dietrich about Martinez's leave of absence during the time of the email communication, and testified that there was no reason to have a conversation. *See* Alexander Dep. 182:16-183:7, 185:12-18. Also, Dietrich was the "top HR person responsible for administering leaves for [Defendants]," where she concluded that Martinez's leave request was indefinite, and there was no written policy on granting leave requests. *See* Dietrich Dep. 96:4-10, 96:25-97:4, 98:1-5, 100:11-16, 110:3-15. This then creates a question of fact regarding if the decision to deny Martinez's leave request was a group decision, and if Dietrich had the "authority and discretion to interpret and apply . . . [leave] policies for [Defendants] as she saw fit, such that her decisions ultimately determined corporate policy." *King*, 266 Cal. Rptr. 3d at 557; *see also* Dkt. No. 37 at 20-21.

Finally, as to Salinas, the district manager, the Court finds there is no genuine dispute as to whether he is a "managing agent." Salinas testified that he was not tasked "with any particular assignments" when he visited a store, Salinas Dep. 160:16-19, and that he had "pretty broad discretion in how to fulfill [his] job duties," *id.* 161:2-4, which included "ensuring restaurants were following company standards," *id.* 159:17-21. But unlike the manager employee in *White*, who "exercised substantial discretionary authority over vital aspects of [the defendant's] business that included managing numerous stores on a daily basis and making significant decisions affecting both store and company policy," *White*, 981 P.2d at 954, Salinas did not make "significant decisions" that affected Defendants' policies. Salinas testified that he never created "any policies for the general managers that were in [his] stores," Salinas Dep. 161:5-9. And when asked if he had the responsibility to "interpret [Defendants' company] standards," he said he "would read them as they

were." *Id.* 161:25-162:5. Martinez cannot provide facts to show that in his role as district manager, Salinas used his discretion to interpret or deny Martinez's leave request. *See* Dkt. No. 37 at 22. To that end, there is no genuine dispute of material fact regarding if Salinas was a "managing agent."

In sum, because there are genuine issues of material fact regarding whether Alexander and Dietrich were "managing agents," who acted with "oppression, fraud, or malice," the Court DENIES summary judgment to Defendants on the issue of punitive damages as to Alexander and Dietrich. The Court GRANTS summary judgment to Defendants on the issue of punitive damages as to Salinas.

## VI.    Conclusion

For the foregoing reasons, the Court hereby ORDERS as follows:

1. The Court DENIES summary judgment as to:

    a.   Martinez's first cause of action for disability discrimination;

    b.   Martinez's second cause of action for failure to prevent discrimination;

    c.   Martinez's fifth cause of action for retaliation; and

    d.   Martinez's sixth cause of action for wrongful termination.

    e.   Martinez's claim for punitive damages as to Alexander and Dietrich.

2. The Court GRANTS summary judgment as to:

    a.   Martinez's claim for punitive damages as to Salinas.

IT IS SO ORDERED.

Dated: April 17, 2026

_____

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge